UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL SPICOLA,

                                        Petitioner,

                                                        **Hon. Hugh B. Scott**


                                                        **13CV20S**

                v.
                                                        **Report**
                                                        **&**
                                                        **Recommendation**


DAVID UNGER,

                                        Respondent.


This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 10) and following remand (Docket No. 22, Order of Aug. 12, 2015) upon the rejection in part of the first Report and Recommendation (Docket No. 12) in this action.  The instant matter before the Court is the Petition for habeas corpus (Docket No. 1).  Familiarity with the prior Report (Docket No. 12) and Judge William Skretny's decision on it (Docket No. 22) is presumed.

## BACKGROUND

Petitioner was convicted, following a jury trial, of six counts of sodomy in the first degree, in violation of New York Penal Law § 130.50(3); three counts of sexual abuse in the first degree, in violation of Penal Law § 130.65(3); and one count of endangering the welfare of a child, in violation of Penal Law § 260.10.  These charges arose from defendant engaging in reciprocal oral to genital contact with his male cousin, a six to eight years old boy during the

periods of defendant's activity (hereinafter the "victim").  Petitioner was sentenced to concurrent

twelve-year term for the sodomy counts; concurrent seven-year term for sexual abuse counts;

and concurrent one-year term for endangering the welfare of a child.

The victim, who testified when he was fourteen years old, recalled incidents in 1999 to

2001 when he was ages six through eight with petitioner (see Docket No. 1, Pet., Appx., Ex. H at

A119, Trial Tr. 174).  Petitioner and the victim were second cousins and often spent time

together, including sleeping over at petitioner's home and playing "knee hockey" with him

(Docket No. 7, Resp't Memo. at 4, citing Trial Tr. 176-78, 544).  During three separate

occasions, of which the victim did not remember the exact dates, the victim performed oral sex

on petitioner and petitioner did the same upon the victim (Docket No. 7, Resp't Memo. at 4,

citing Tr. 183, 186).  Years later in 2006, when victim was in high school, he told his mother

about these incidents (Docket No. 7, Resp't Memo. at 4, citing Tr. 204-05; see Tr. 202-03).  The

victim's mother recalled a prior incident when the petitioner tickled the victim and the victim

reacted by going into a fetal position and turning from the petitioner (Docket No. 7, Resp't

Memo. at 4, citing Tr. 319-20).  The victim's mother then called the police (Docket No. 7, Resp't

Memo. at 4, citing Tr. 325).

Stefan Perkowski, a licensed clinical social worker, testified for the prosecution

concerning Child Sexual Abuse Accommodation Syndrome (or "CSAAS") (Docket No. 7,

Resp't Memo. at 5, citing Tr. 364), after petitioner filed an unsuccessful motion in limine to

preclude this testimony.  Perkowski testified that he was not offering an opinion on whether or

not the victim had been sexually abused by petitioner, but he testified about the common

behaviors of children subjected to sexual abuse (Docket No. 7, Resp't Memo. at 5; citing

2

Tr. 364).  He concluded that the presence of any of these behaviors did not automatically mean that a child had been abused (Docket No. 7, Resp't Memo. at 5, citing Tr. 370).

Nurse practitioner Deborah Dee testified that she examined the victim after his 2006 disclosure (Docket No. 7, Resp't Memo. at 12, citing Tr. 297; see also Tr. 208 (victim testifying to examination)).  Dee stated that the victim told her of the incidents and Dee stated that the victim exhibited embarrassment, downcast eyes, a flushed face, and an elevated heart rate as he spoke of the abuse (Docket No. 7, Resp't Memo. at 12, citing Tr. 299).

Petitioner testified denying that he sexually abused the victim (Docket No. 7, Resp't Memo. at 5, citing Tr. 561, 570, 580, 588), see also People v. Spicola, 16 N.Y.3d 445, 447, 922 N.Y.S.2d 846, 848-49, cert. denied, 565 U.S. ___, 132 S.Ct. 400 (2011).

*Appellate Division Decision*

Petitioner appealed, arguing that expert testimony was admitted in error, that this testimony and the testimony of a nurse practitioner were improperly bolstered, and that he received ineffective assistance of counsel at trial in his counsel failing to make timely objections to this testimony, and other grounds.  The Appellate Division of the State Supreme Court affirmed the conviction, People v. Spicola, 61 A.D.3d 1434, 877 N.Y.S.2d 591 (4th Dep't 2009). Pertinent to this Petition, the court rejected petitioner's contentions that the Erie County Court erred in admitting expert testimony concerning Child Sex Abuse Accommodation Syndrome (or "CSAAS"), 61 A.D.3d at 1434, 877 N.Y.S.2d at 592, "as well as statements made by the victim concerning the incidents at issue to the nurse practitioner that were relevant to the victim's diagnosis and treatment," id.  The court also rejected petitioner's claims of ineffective assistance of trial counsel for failing to preserve certain contentions for appeal, id.

*New York Court of Appeals Decision*

The New York State Court of Appeals affirmed the Appellate Division's decision in a 4-3

decision, <u>Spicola</u>, <u>supra</u>, 16 N.Y.3d 441, 922 N.Y.S.2d 846, <u>cert. denied</u>, 132 S.Ct. 400 (2011).

There, the majority held that the clinical social worker could testify to CSAAS regarding the

victim's delayed reporting of the incident, 16 N.Y.3d at 453-55, 460-67, 922 N.Y.S.2d at 853,

857-67, applying state law on the issue.  The majority upheld the admission of expert testimony

on traumatic syndromes, like CSAAS, for facts where the jurors might not understand.  The

social worker here testified that CSAAS was widely accepted in the relevant scientific

community, <u>id.</u>, 16 N.Y.3d at 457, 922 N.Y.S.2d at 855-56.  Reference to CSAAS provided

understanding of why children may delay reporting sexual abuse, <u>id.</u>, 16 N.Y.3d at 463, 922

N.Y.S.2d at 859-60.  The majority also held that the trial court did not abuse its discretion in

allowing the expert to testify about CSAAS to rehabilitate the victim's credibility, 16 N.Y.3d at

465, 922 N.Y.S.2d at 861.  The majority also allowed the admission of nurse-practitioner Dee's

testimony regarding the victim (such as the answers given by the victim to the nurse-

practitioner's questions during her examination and her notation of his physical and emotional

condition) as an exception to hearsay rules, <u>id.,</u> 16 N.Y.3d at 451-53, 922 N.Y.S.2d at 851-53.

In dissent, Chief Judge Lippman argued that the trial concerned events seven to eight

years earlier, with no physical evidence produced, and where the petitioner did not admit to the

conduct.  The case thus became a credibility contest, where Chief Judge Lippman concluded that

the prosecution prejudicially bolstered the credibility of the victim, resulting in petitioner being

denied a fair trial.  <u>Id.,</u> 16 N.Y.3d at 467, 922 N.Y.S.2d at 863 (Lippman, Ch. J., dissenting).

4

*Child Sexual Abuse Accommodation Syndrome*

Central to petitioner's arguments is the application of Child Sexual Abuse

Accommodation Syndrome (or "CSAAS") in this prosecution.  CSAAS was first coined by

Dr. Roland Summit to describe "a pattern of 'secrecy, helplessness, entrapment [and]

accommodation, delayed disclosure, and recantation as common characteristics in children who

report sexual abuse,'" Spicola, supra, 16 N.Y.3d at 453-54, 922 N.Y.S.2d at 853 (citations

omitted).  Petitioner contends that scholars of child sexual abuse have rejected CSAAS as a

syndrome, that an inadequate basis was made to allow the expert to testify about CSAAS, and

that his trial counsel was constitutionally deficient in not resisting introduction of this expert

testimony (Docket No. 8, Pet'r Memo. at first through third, third through fourth unnumbered

pages).

*Habeas Petition*

Petitioner contends that the state trial court erred in admitting CSAAS evidence, despite

being rejected by the United States Court of Appeals for the Second Circuit in Gersten v

Senkowski, 426 F.3d 588 (2d Cir. 2005), depriving petitioner of a fair trial under the Fifth, Sixth,

and Fourteenth Amendments (Docket No. 1, Pet. ¶ 22(a); Docket No. 11, Pet'r Memo. at 8, 11-

13).  He argues that the victim's testimony was bolstered by the expert's CSAAS explanation, as

well as bolstering the testimony of nurse-practitioner Dee (Docket No. 1, Pet. ¶¶ 22(b), (c);

Docket No. 11, Pet'r Memo. at 8, 14-19, 19-22).  Petitioner argues that his right to a

fundamentally fair trial under Lisendba v. California, 314 U.S. 219, 236 (1941), and subsequent

cases (Docket No. 11, Pet'r Memo. at 10 & n.11) was violated by the admission of the CSAAS

expert testimony and its bolstering of testimony.  Petitioner's trial attorney also was ineffective

Case 1:13-cv-00020-WMS-HBS   Document 23   Filed 11/30/15   Page 6 of 21

in not more aggressively resisting this purported expert testimony and not calling a rebuttal expert, as well as numerous other errors and omissions that petitioner concludes deprived him of effective counsel (Docket No. 1, Pet. ¶ 22(d) Docket No. 11, Pet'r Memo. at 22-55).

Respondent argues that the admission of the CSAAS testimony and the testimony of the nurse-practitioner were not unreasonable applications of clearly established federal law as found by the United States Supreme Court (Docket No. 7, Resp't Memo. at 6-8, 12-14), that the questions asked of the CSAAS expert were rejected by the state courts on independent and adequate state law grounds (id. at 9-11), and that petitioner's remaining ineffective assistance of counsel grounds were either procedurally defaulted or meritless (id. at 15-25).  The procedural default cited here was petitioner's failure to raise some of these assertions (grounds 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14; respondent's numbers15 (failure to preserve for appellate review) and 16 (not objecting to prosecution summation and jury misconduct)) in his direct appeal or these were raised and rejected on direct appeal (id. at 16).  As for the last ineffectiveness ground of jury misconduct, respondent notes that the state court properly denied this for petitioner's failure to support his claim before the criminal court and this constituted another independent state law bar to habeas review (id. at 16-17).  Alternatively, respondent argues that these allegations lack merit (id. at 17-25).  Respondent rests upon the "strong[]" presumption that trial counsel's performance was adequate (id. at 17, quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)).  Respondent argues that petitioner needs to establish that "the state court applied Strickland to the facts of the case in an objectively unreasonable manner," Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) (id.).  Emphasizing the heavy burden petitioner has under

Strickland, supra, 466 U.S. at 686, 689, and its progeny, id.; see Eze v. Senkowski, 321 F.3d 110,

112 (2d Cir. 2003), respondent contends that petitioner has not met that burden (id. at 17-18).

Respondent argued that these grounds above are a repeat of those argued unsuccessfully

in petitioner's CPL 440.10 motion (id. at 15), many of which could have been raised on appeal

and their rejection in the CPL 440.10 motion is an adequate and independent state law ground for

denying habeas relief (id. at 16), Murden v. Artuz, 497 F.3d 178, 196 (2d Cir. 2007) (procedural

bar of decided 440.10 motion).  To respondent, defense counsel's performance was "more than

adequate, as he vigorously cross examined" the victim, neutralized the Government's CSAAS

expert in cross examination, and made several motions to keep prejudice at bay (id. at 18).

Respondent contends that several of petitioner's present claims are "nitpicking" of defense

counsel and "second-guessing his strategic choices" (id.).  Respondent concludes that defense

counsel's strategy—challenge the reliability of victim's testimony and the CSAAS expert's

findings—was sound (id. at 18-19).  Other claims that defense counsel did not raise, such as

challenging the sufficiency of evidence, challenging improper jury instructions, and questioning

the prosecution summation, respondent argues were not meritorious and should not have been

made (id. at 19).

Petitioner summarized his complaints about his representation in four categories, the

failure to investigate or perform pretrial functions (id. at 23, grounds 1, 5, 11, 10[1]); failure to

---

[1]Here are the grounds alleged by petitioner:  (1) failure to prepare for trial; (2) failure to
properly cross examine victim; (3) failure to properly cross examine victim's mother, Jill
Spicola; (4) failure to properly cross examine nurse-practitioner Deborah Dee; (5) failure to
properly cross examine CSAAS expert Stefan Perkowski; (6) failure to develop timing
discrepancies; (7) failure to explain the bus driver incident; (8) failure to utilize character
witnesses; (9) failure to object to improper bolstering; (10) failure to call expert witness; (11)
failure to dispute scientific reliability or applicability of CSAAS; (12) failure to develop a

pursue available defenses (id., grounds 6-8, 10-13); failure to use evidence or testimony at trial (id. at 23-24, grounds 2-8, 10-14); and failure to object to improper use of evidence at trial (id. at 24, grounds 9, 15, 16).  He argues that the cumulative impact of these instances should be aggregated and considered to find ineffective assistance of counsel (id. at 24-25).

*Decisions on the Habeas Petition*

This Court issued a Report which recommended granting habeas relief and ordering Sparman v. Edwards, 387 F.3d 193 (2d Cir. 1998), hearing on the question of defense counsel's ineffective assistance regarding CSAAS evidence (Docket No. 12, Report at 14).  The Report also recommended denying other grounds asserted by petitioner and did not consider other claims of ineffective assistance of counsel (id.).

After objections by both parties (Docket Nos. 13 (respondent's objections), 15, 16 (petitioner's objections)), Judge Skretny agreed with respondent and held that Gersten v. Senkowski, 426 F.3d 588 (2d Cir. 2005), cert. denied, 547 U.S. 1191 (2006), did not dictate a finding of ineffective assistance of counsel where defense counsel failed to call an expert regarding the CSAAS testimony from the prosecution, distinguishing that case from the prosecution before this Court (Docket No. 22, Order of Aug. 12, 2015, at 2-3 (noting efforts of defense counsel to counteract any assumption that the prosecution's expert testimony was either conclusive or constitute a finding that the victim suffered from that syndrome)).  The case was remanded because this Court did not address (either individually or collectively) the other errors

rationale for the victim's perjury; (13) failure show defendant did not fit abuser profile; (14) failure to discredit victim's rehearsed, conflicted testimony; and (15) failure to object to prosecutorial overreaching in her summation.  Also included among the ineffective representation was counsel's failure to preserve objections for appeal, Docket No. 11, Pet'r Memo. at 53-54; Docket No. 7, Resp't Memo. at 15 (listed as 15th ground).

petitioner argues were instances of ineffective assistance of defense counsel (see Docket No. 12, Report at 12, 6 n.1; see also note 1, supra).  Judge Skretny adopted the Report on petitioner's other claims (Docket No. 22, Order at 4).

## DISCUSSION

I.      Strickland Standard

The Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), held that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must satisfy a two-part test that:  1) counsel's representation fell below an objective standard of reasonableness; and 2) a showing of prejudice by the reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, id. at 687-88, 694 (see also Docket No. 12, Report at 10).  Defense counsel in state court is strongly presumed to have rendered adequate assistance, id. at 687-88 (Docket No. 13, Resp't Objections ¶ 21; Docket No. 21, Resp't Reply to Pet'r Objections ¶ 7).  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," id. at 690.  Petitioner has to "show that the state court applied Strickland to the facts of the case in an objectively unreasonable manner," Visciotti, supra, 537 U.S. at 25 (Docket No. 13, Resp't Objections ¶ 22; Docket No. 7, Resp't Memo. at 17).  Federal courts have granted defense counsel, on habeas review, latitude regarding the strategic direction they wish to take in defending their cases, Harrington v. Richter, 562 U.S. 86, 106-07 (2011) (id. ¶ 23; Docket No. 21, Resp't Reply to Pet'r Objections ¶ 7).

II.     Application

Petitioner argues that (both separately and cumulatively) his defense counsel's errors deprived him of effective assistance of counsel.  Putting to one side the individual claims arising from the CSAAS evidence and the failure to rebut with defense expert considered in the initial Report (grounds 5, 10, 11, 9, Docket No. 12, Report at 13, as well as grounds considered with the CSAAS evidence, grounds 4, 5, 11, 2 and 3, Docket No. 12, Report at 14) and ruled on by Judge Skretny (see Docket No. 22), this Court will consider the remaining purported individual errors or omissions and then the cumulative effect of all these errors and omissions on petitioner's defense.

Respondent argues that many of these individual grounds are procedurally barred since petitioner did not raise them before the state courts.

A.     Petitioner's Claimed Individual Instances of Ineffective Assistance

1.     First Ground, Failure to Prepare for Trial

First, petitioner argues that defense counsel failed to study the CSAAS study to ready himself for the cross examination of the Government's CSAAS expert (Docket No. 11, Pet'r Memo. at 26).  Petitioner ties this to his former counsel's failure to retain an expert to rebut the Government's CSAAS expert (id.).

There was no deficient representation here.  Defense counsel initially tried to exclude CSAAS testimony in the rejected motion in limine.  As noted in Judge Skretny's Order (and quoted below, Docket No. 22, Order at 3 (quoting, in turn, Tr. 391-98)), defense counsel then cross examined the prosecution CSAAS expert witness about the facts of this case; the age of the research the expert relied upon; and the possibility that the factual predicates for the expert

testimony might have been fabricated.  These show that defense counsel prepared for trial, but

made strategic choices during the course of the trial that petitioner, in hindsight, disagrees with.

> 2.      Second Ground, Failure to Cross Examine the Victim;
>         Third Ground, Failure to Cross Examine the Victim's Mother

Next, petitioner faults his counsel for not cross-examining the infant victim on

inconsistencies in his testimony (Docket No. 11, Pet'r Memo.at 26-30), that defense counsel did

not focus on the "evolution" of the victim's story from prior statements to the trial testimony (id.

at 30).  Petitioner also claims that his counsel did not properly cross examine victim's mother,

Jill Spicola, on her actions and reactions after learning of the accusations against petitioner and

his subsequent interactions with her son (Docket No. 11, Pet'r Memo. at 30-33).  Petitioner did

testify, but now concludes that his counsel failed to present any motivation for Jill Spicola to

testify as she did, hanging petitioner "out to dry by his own lawyer" (id. at 33).

As for these two cross-examinations, "[d]ecisions about 'whether to engage in cross-

examination, and if so to what extent and in what manner, are . . . strategic in nature' and

generally will not support an ineffective assistance claim," Dunham v. Travis, 313 F.3d 724, 732

(2d Cir. 2002); see Smalls v. McGinnis, No. 04 Civ. 0301 (AJP), 2004 U.S. Dist. LEXIS 15480,

at *60-62 (S.D.N.Y. Aug. 13, 2004) (Peck, Ch. Mag. J.).  Petitioner here has not shown that the

discrepancies or motives raised had the cross examinations occurred as he desired would have

resulted in a different outcome, thus not meeting the second, prejudice prong under Strickland,

see 466 U.S. at 694; Wong v. Belmontes, 558 U.S. 15, 19-20 (2009) (per curiam); see also

Farrington v. Senkowski, 214 F.3d 237, 242 (2d Cir. 2000).

3.         Sixth Ground, Failure to Develop Timing Discrepancies

Petitioner then faults counsel for not reviewing the timeline of the various sleepovers the victim had at petitioner's home, relative to when the victim claimed the incidents of sexual abuse occurred (Docket No. 11, Pet'r Memo. at 38-40).  The first sleepover was during Christmas vacation of 1999, but the first alleged incident of sexual abuse occurred eight months before, between March 30 and April 8, 1999 (id. at 38 & n.39).  Petitioner faults defense counsel for making "limited attempts" to present the timing discrepancies (id. at 38) and faults him for not calling additional witnesses or having already called defense witnesses elaborate on this timeline issue (id. at 38-40).

Here, petitioner fails to show that the representation was deficient, merely differing with defense counsel's strategy in what witnesses to call and to what extend they need to address the timing discrepancy.

4.         Seventh Ground, Failure to Explain Bus Driver Incident

Petitioner resigned as head bus driver for the North Collins school district due to a pay dispute, but defense counsel did not raise this during the trial (Docket No. 11, Pet'r Memo. at 40).  Instead, the prosecution claimed (outside the presence of the jury) that petitioner was dismissed from that job because of sexual improprieties with other boys (id.; Ex. H, R. 64-69, A 97-102).  Petitioner then was cross-examined on his dismissal, creating doubt as to petitioner's credibility (Docket No. 11, Pet'r Memo. at 40-41, citing R. 559-62).

Review of this cross-examination, however, reveals that the prosecution was focused on the career history of petitioner and whether he had time to drive a bus with his other occupations and activities (R. 559-62), that petitioner turned down another job with the Village of Gowanda

12

while bus driving (R. 560-61); there is no reference to his dismissal or the reason for it or any mention of sexual improprieties with anyone other than the victim.  Although defense counsel did not explain petitioner's entire occupational history, this failure (coupled with the prosecution cross-examination) was not deficient representation.

　　　　　5.　　　Eighth Ground, Failure to Utilize Character Witnesses

Defense counsel intended to produce witnesses, including petitioner, as to his reputation for integrity in the community, but, under New York law, see People v. Miller, 35 N.Y.2d 65, 68, 358 N.Y.S.2d 733, 736 (1974); People v. Van Gaasbeck, 189 N.Y. 408, 82 N.E. 718 (1907); People v. Fanning, 204 A.D.2d 978, 620 N.Y.S.2d 23 (4th Dep't 1994), leave denied, 85 N.Y.2d 908, 627 N.Y.S.2d 331 (1995); Prince, Richardson on Evidence § 4-403 (2008), character witnesses cannot be used unless it relates to the "traits" of the underlying offense (Docket No. 11, Pet'r Memo. at 42).  Then, defense counsel changed strategy; petitioner now argues that, having called petitioner, his daughter, and his paramour as fact witnesses, defense counsel also should have called the four boys he raised or coaches, players, and parents petitioner had contact with (id. at 43).  Petitioner sought counsel to call other witnesses but defense counsel rejected these names (id. at 43 n.42).  While allowing this testimony would have opened petitioner to face bad acts testimony in response, he contends that the risk from any bad acts testimony would have been minimal (id. at 44).

Given New York law on the availability of character witness testimony beyond the traits of the offense, defense counsel's tactical decision not to call character witnesses (or ask character testimony from the few witnesses called) that either may not be allowed to testify or would not

have been allowed to testify to the full extent petitioner seeks is not deficient.  It would have

been futile for defense counsel to use this tact if that testimony would have been excluded.

6.      Twelfth Ground, Failure to Develop a Rationale for the Victim's
        Perjury

Petitioner contends that defense counsel did not offer a rationale to explain why a

fourteen year old victim would perjure himself in this case (Docket No. 11, Pet'r Memo. at 48);

openly admitting that he had no suggestion for the victim's motives (id.; Ex. H, R. 634 (defense

closing), 675 (prosecution's closing), A 212A, 212B).

Defense counsel's theory in his summation (R. 634-35) was that the case posed numerous

unanswered questions (including the victim's motivation in how he testified); questions defense

counsel did not attempt to answer.  He posed them to lead the jury to conclude that reasonable

doubt existed.  The manner of defense counsel's argument in summation is a "matter of tactics,"

United States v. Daniels, 558 F.2d 122, 127 (2d Cir. 1996); see Strickland, supra, 466 U.S. at

689, that cannot be second guessed in habeas review.

7.      Thirteenth Ground, Failure to Show Defendant Did Not Fit Abuser Profile

Next, petitioner points out that defense counsel's failure to call his own expert removed

the basis for showing that petitioner did not fit into a pedophile abuser profile of a person who

has committed multiple attacks (Docket No. 11, Pet'r Memo. at 51-52).  Petitioner now argues

that studies of pedophilia against boys show that it is rarely an isolated incident, that it usually

multiple abuses (id.; see Pet'r CPL 440.10 Motion, Ex. A-2, Dr. Jonathan Mack Aff. ¶ 7, A. 74).

Petitioner cites to Dr. Jonathan Mack, the expert he wished his counsel had retained.  Dr. Mack

was posed a hypothetical situation of sexual abuse occurring three times when the child was in

the first and second grade and without further incident for the next six to seven years and where

14

the abuser and the child were alone together (Pet'r CPL 440.10 Motion, Ex. A-2, Mack Aff. ¶ 7,

A. 74).  Based on the review of the literature, Dr. Mack opined that this "course of conduct [in

the hypothetical] is inconsistent with the profile of pedophiles developed in various studies"

(id.).

　　　This claim rests upon defense counsel's failure to retain an expert to oppose the

prosecution's CSAAS expert (the issue considered in the initial Report, Docket No. 12, Report at

13-14, and Judge Skretny's Order, see Docket No. 22, Order at 2-3); it was a strategic decision

not subject to second guessing on habeas review.  Petitioner thus fails to show that defense

counsel's decision making was deficient.

　　　　　　8.　　Fourteenth Ground, Failure to Discredit Victim's Rehearsed, Conflicted
　　　　　　　　　Testimony

　　　Here, petitioner contends that victim's testimony was rehearsed but defense counsel

failed to make note of that for the jury (Docket No. 11, Pet'r Memo. at 52-53).  Petitioner's

proposed expert, Dr. Mack, also was posed another hypothetical, noting that the description of

the event was the same for three separate incidents.  Dr. Mack concluded that it was highly

unlikely that a victim would describe three incidents in the same words absent some outside

source (id.).  Petitioner concludes from this that the victim's testimony was rehearsed.  Petitioner

also argues that there were conflicts in victim's testimony (such as factual gaps, vagueness, and

inconsistencies noted by Dr. Mack) that defense counsel failed to exploit (id. at 53).

　　　Petitioner has not shown exculpatory information in the inconsistencies in the testimony

of a youthful witness, the victim, see Bilal v. Graham, No. 11CV04195 (SAS), 2015 U.S. Dist.

LEXIS 80651, at *50-51 (S.D.N.Y. June 22, 2015).  Again, the decisions whether, and to what

extent, defense counsel cross examines a witness "are strategic in nature, and, if reasonably

made, will not constitute a basis for an ineffective assistance claim," <u>Brink v. Conway</u>,

No. 07CV6032, 2010 U.S. Dist. LEXIS 18330, at *10 (W.D.N.Y. Mar. 2, 2010) (Telesca, J.); <u>see</u>

<u>United States v. Neresian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987).

        9.      Fifteenth Ground, Failure to Preserve Objections

Next, petitioner faults defense counsel for not preserving for appellate review (Docket

No. 11, Pet'r Memo. at 53-54).  The New York State Court of Appeals noted on petitioner's

CPL 440.10 motion that he waived his arguments surrounding improper bolstering by the

People's expert and the nurse due to the absence of objection, hence not preserving them for

review (<u>id.</u> at 25).

As respondent notes (Docket No. 7, Resp't Memo. at 19), defense counsel cannot be

deemed ineffective for not raising non-meritorious claims, <u>United States v. De La Pava</u>, 268 F.3d

157, 163 (2d Cir. 2001), such as the legal sufficiency of evidence, alleged prosecutorial

misconduct in the summation, and the propriety of certain jury instructions (<u>id.</u>).

        10.     Sixteenth Ground, Failure to Object to Prosecutorial Overreaching  in
                      Summation and Alleged Jury Misconduct

Petitioner argues that the prosecutor testified during her summation, noting that

petitioner's eyes were closed each time he was asked whether he was guilty of the crime charged

(Docket No. 11, Pet'r Memo. at 54; Ex. H, R 680-81; A 213-14).  Petitioner deemed this to be

grounds for a mistrial (Docket No. 11, Pet'r Memo. at 54), as well as issues raised from two

jurors overheard talking about guilt in the elevator (<u>id.</u>).  Petitioner contends that he asked

defense counsel to raise the potential jury misconduct issue but counsel refused and petitioner

believes that this would have been a ground for mistrial (<u>id.</u> at 54-55).

Respondent contends that there was no affidavit from the witness to the jurors' discussion, Brenda Bauer Petrus, to support a 440.10 motion and the New York Court of Appeals was within its rights to summarily deny this argument (Docket No. 7, Resp't Memo. at 16), see N.Y. C.P.L. 440.30(4)(b), (d). Petitioner is not arguing that counsel is at fault in not obtaining these affidavits to preserve this error. The independent state law bar of failing to comply with CPL 440.30 to preserve the allegation is sufficient ground for rejecting petitioner's contention.

B.      Errors Considered Collectively

Petitioner alternatively argues that these errors, seen together, establish a pattern of ineffective representation, all stemming from the mishandling of the prosecution's CSAAS evidence and the failure to challenge the prosecution's CSAAS expert. Essentially, petitioner argues that his defense counsel mishandled CSAAS by not countering the prosecution's expert with the defense's own, hence (for example) not adequately preparing to cross examine the prosecution's expert. But as was held (Docket No. 22, Order at 3 (quoting, in part, Tr. 391-98)), "trial counsel elicited testimony from the expert on cross-examination that the expert knew nothing regarding the facts of the case against Petitioner; that every case was different; that the expert was relying in part on a more than twenty-year old research paper which referred to only a 'broad range of behaviors;' and that it was possible the allegations in the present case were fabricated by the victim." That cross examination also elicited concessions from that expert that he did not hold a doctorate (id.). Defense counsel also obtained a "detailed jury instruction that the jurors should consider the victim's failure to promptly complain" (id.), the reason for the prosecution's introducing CSAAS expert testimony, and emphasis to the jurors that credibility

17

determination was in their hands (id.), Spicola, supra, 16 N.Y.3d at 464 n.8, 922 N.Y.S.2d at 860.

Respondent has a two-prong argument against these contentions:  first, that petitioner fails to show that the state courts misapplied the Strickland ineffective assistance standards in an objectively unreasonable manner, Visciotti, supra, 537 U.S. at 25 (Docket No. 7, Resp't Memo. at 17); second, that petitioner did not meet his heavy burden that the two-part test of Strickland has been met (id. at 17-18).

This Court needs to "assess the aggregate effect of these alleged errors to determine whether the cumulative weight rises to the level of constitutional deficient conduct," Eze, supra, 321 F.3d at 135 (Docket No. 11, Pet'r Memo. at 55).  In addition to the grounds outlined above, petitioner points to various pieces of evidence introduced in his CPL 440.10 motion but not introduced a trial by defense counsel (id. at 55 n.49).

Viewed collectively, the errors raised by petitioner do not reach either prong under Strickland for ineffective assistance.  The points raised here do not show deficient representation. Given the state of New York law (and current Supreme Court law, but cf. Gersten, supra, 426 F.3d 588) regarding the admissibility of CSAAS evidence as expert testimony, and the denial of the motion in limine to restrict its admission, defense counsel did what he could to counter and minimize it and made the strategic decision not to counter that expert with his own and turn the case into a duel over the CSAAS.  This area allows the prosecution to explain the limits in the juvenile victims' testimony.  As trial strategy, the defense counsel is given wide latitude (Docket No. 7, Resp't Memo. at 18) that will not be second guessed on habeas review, see Harrington v. Richter, 562 U.S. 86, 107 (2011).  Many of the individual objections are the

18

product of defense strategy that (as stated repeatedly above) is not the subject of habeas review for claims of ineffective assistance of counsel.

Furthermore, the state courts here did not apply the <u>Strickland</u> standards to the facts here in an unreasonable manner.  Petitioner's claims needed to be preserved and properly raised before the appellate and CPL 440 courts and failure to raise an issue on appeal is not automatically ineffective representation; petitioner needed to show that his contentions for the unraised issues are meritorious, <u>Spicola</u>, <u>supra</u>, 61 A.D.3d at 1435, 877 N.Y.S.2d at 592 (quoting <u>People v. Bassett</u>, 55 A.D.3d 1434, 1438, 866 N.Y.S.2d 473, 478 (4th Dep't 2008), <u>leave denied</u>, 11 N.Y.3d 922, 877 N.Y.S.2d 7 (2009)).  In <u>Bassett</u> itself, the Fourth Department turned aside a defendant's claim that his counsel was ineffective in cross examining the prosecution's CSAAS expert, 55 A.D.3d at 1438, 866 N.Y.S.2d at 478.

Some of the grounds asserted (such as defense counsel's failure to show that petitioner did not fit an abuser profile or failing to develop a rationale for the victim's perjury) do not show how petitioner was prejudiced or that these contentions would have prevailed had they been invoked.

C.      In Summary

The various ineffective assistance of counsel assertions, either individually or collectively, should be **denied** as grounds for habeas relief.  Petitioner's habeas corpus Petition (Docket No. 1) should be **dismissed**.

## CONCLUSION

Based upon the above, it is recommended that petitioner's Habeas Corpus Petition (Docket No. 1) be **dismissed**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

   SO ORDERED.


             */s/ Hugh B. Scott*

             Hon. Hugh B. Scott
            United States Magistrate Judge

Dated: Buffalo, New York
   November 30, 2015